I move the admission of Nelson Kwan, who is a member of the Bar, and is in good standing with the Highest Court of Virginia. I have knowledge of his credentials and am satisfied that he possesses the necessary qualifications. As all my clerks know, this is a very bittersweet time of the year for me because we sort of lose a clerk, but hopefully not really because they remain part of our family and the court's family. It's just been a pleasure and an honor to have Nelson in our chambers for a year. He's made a major contribution and we have enormous admiration and affection for him personally as well as professionally. So, we welcome you to the Bar, you may take the oath. Oh, I'm sorry, I have nothing for granted, I am very sorry. Does this sound premature? Do I hear any opposition to this motion from the panel or otherwise? If not, I shall take a vote on my note. I concur. Of course, I agree that the motion is granted. Now you may take the oath. Welcome to the Bar and please proceed to the administration. Mr. President, I do solemnly swear or affirm that you will support this service and will train and counsel this court uprightly and affordably and that you will support the Constitution of the United States of America. I do. I pledge allegiance to the flag of the United States of America and to the republic for which it stands, one nation, under God, indivisible, with liberty and justice for all. Thank you, again welcome to the Bar. The first case this morning is 147097, Palmateer v. McDonald. Mr. Carpenter. Thank you very much, Your Honor. May it please the Court. Kenneth Carpenter appearing on behalf of Mr. Lawrence Palmateer. In this case, Mr. Palmateer appealed the initial rating assigned to his service-connected back disability. During the pendency of that appeal, he raised explicitly the issue of his entitlement to an extra scheduler total rating. The VA mistakenly adjudicated that as a separate claim and adjudicated it in part but prospectively only. Wait, are you talking about the December 2009 claim for TDIU? That's correct, Your Honor. Okay. And by treating it as a separate claim, they dismembered it, to use a term that the lower court has used, from the original claim. Can I ask you, and this is just a technical question, it seemed to me that he prevailed on the December 2009 claim. He did. But the problem for you all is that he couldn't get any fact-dated benefits, right? That's correct, from 2002 to 2009. But if this were part of the case that's before us today, then what he's seeking is the back. He's currently getting TDIU, so he's just seeking the back part of it. Well, not exactly. He's seeking the front part of it. Oh, well. Well, because this is part of his original claim. And what the Veterans Court did and the mistake that they made was to consider this as a separate consideration. But just for our purposes, to chop up this case, your client already has the TDIU from December 2009 until the present. That's correct. What you are specifically seeking for your client is TDIU from 2002 to 2009. Is that correct? That is correct. Anything else? No. But in the context of the error made below where the court below said that he had to file a Notice of Disagreement in order to get that entitlement. He did not have to file a Notice of Disagreement because in 2008 he had filed a Notice of Disagreement with the initial rating aside. So are you saying that their mess up here was because they should have combined his filing in 2009 with 2008? Because I thought it was a little different. I thought you were saying that forget about that 2009 claim. If you look at the 2008 claim and that Form 9 or whatever it is we're talking about, it was part and parcel of that. The claim originated in 2002. Unfortunately in this area we tend to imprecisely use terms like claim. This matter began with the filing of a claim in 2002 seeking service-connected compensation for his back. It was originally denied. He succeeded in that appeal and then in 2008 he was granted. That was the first time he was granted service-connected compensation. He filed a Notice of Disagreement with the initial rating assigned for the scheduler rating for his back. Then during the pendency of that appeal he initiated a claim or raised the issue of his entitlement to an extra scheduler rating. Under this court's case law… And when you say that, are you saying in connection with that claim in the form or are you talking about the 2009? No, we're talking about the 2002 claim that began when he asked for it in the first place. Is the 2009 filing for increased TDIU, is that separate and distinct then from what you've been telling us about? No, it is the expression of his desire to raise that issue. Now he had in fact raised it earlier when he wasn't even service-connected and filed this same form. But the fact is that at that point under the case law he raised the issue. He presented to the VA his intent to seek an extra scheduler rating in addition to his scheduler rating. Can I just ask you, this is just a technical question about how this works. What is the threshold that there is a clear threshold for eligibility on TDIU? It's not 100%, is it 70%? No, actually there is no threshold. Under VA regulations 4.16 there are scheduler requirements that you can meet that will trigger it. But then they have a separate regulation at 4.16b that says whether you have a scheduler threshold or not, if you're unable to work due to your service-connected disability, then you're entitled to that extra scheduler total rating. So if you were to prevail here, what is it you're seeking? That we send this back and we say to the CAVC you have to consider his eligibility for TDIU from 2002 to 2009? Actually, because the board didn't consider it, we believe that the correct remedy is for you to direct the veterans court to direct the board. That was the issue that was raised to consider that issue of extra scheduler rating from 2002 to 2009. There's no question in this record that they considered it going forward from 2009. And what is the inquiry? This isn't a gotcha question, I just want to know. Is the inquiry whether or not his lower back disability for that period precluded him from gainful employment? Absolutely, and that's the only issue. And that was the issue that was never adjudicated because they treated it as a separate claim when it came in in 2009, rather than recognizing it as an issue in the appeal that was already pending. I guess that's the question. Was that really an issue raised in the appeal when the appeal specifically calls for a review on the effective date of the 40% rating for the back? No, Your Honor. Well, it says that, doesn't it? In the appeal to the BVA. There is a VA-9 form that is quite frankly extraneous, but was I believe filed by counsel as a protective move to ensure that the effective date portion might be protected. But that frankly is a distraction in this case. The initiation of the appeal in 2008 is what put this case in appeal status when they granted service connection for the back at the board. And then they implemented it and assigned a rating that the veteran was dissatisfied with. The veteran had the opportunity to disagree with that, and he did so. Once he did so, that claim continued. And it continued all the way up to the board decision that was the subject matter of this case. And the complaint of Mr. Palmateer was you only looked at the scheduler side. You did not look at the extra scheduler side. And what's the signal for the board that it knows that somehow inherently, innately, it has to look at something that's actually not being raised by the veteran expressly? Under this court's decision in Comer, any time the veteran raises the issue of an inability to work related to his service-connected disability. Well, where did he raise that? He raised that in the 2008 case in the form, are you talking about the form? No, no. He did it in the 2009, 2189-40 when he filed for that increase for extra scheduler rating. But that was a separate case. No, no, Your Honor. So why was it incumbent upon him to pursue it? Oh, no. It was not a separate case. Under this court's case law and under the case law below, it is part and parcel of the original claim. In the Rice decision below, the veterans court dealt with this issue specifically that TDIU is not a separate claim. TDIU is part and parcel of either an initial determination of rating or part of a claim for increase if raised. Did Mr. Palmentier file some kind of brief to the BVA, to the board? I don't recall, Your Honor. I'm sorry. I did not recall. I guess I'm trying to figure out what is the board's responsibility. If the veteran says, in a board brief, I want you to increase the rating from 40% to something higher than 40% for my service-connected back injury. Okay. Now the board knows what it needs to do. But are you saying that, no, the board needs to do more than that? The board needs to look through the entire file, the entire record, and search for any place in that file where the veteran may have suggested that it is unable, he or she is unable to work due to some kind of service-related injury. Then the board is obligated, after that complete review of the entire file, to consider TDIU? I believe that that is this court's case law in Comer, that that is precisely the burden that is imposed on the VA. But Congress also imposed... You don't think there's something that the veteran needs to signal to the board, at least? No, Your Honor. I mean, at the very least, this one form in July 2010, it says, I want to appeal the effective date of my 40% rating for my back, right? Correct. And then he goes on and says, I retired from my job due to back problems in February 1992. Now, at the very least here, we have a signal from the veteran to the board that he had to retire due to back problems which are service-related. Okay. That sounds like the board now arguably has an obligation then to now consider TDIU because the board understands that there is some kind of... But what you're proposing sounds much more dramatic than that. There's no actual signal that the veteran needs to submit to the board, but the board has to scour the entire file. With all due respect, Your Honor, it's not about scouring the file. It's about recognition that when you get a VA Form 8940, which is curiously framed... Please don't say VA Form XYZ-123. The TDIU application, Your Honor. I'm sorry. When you get that TDIU application, when the VA gets it, that puts them on notice that the issue has been raised. And then they have to simply look at, is there a pending claim for rating? Either increased rating or, in this case, initial rating. And there was. But that was taken care of. I mean, that's what the government is saying. Because he filed that separate filing in 2009, is that the form you're talking about? Yes. Okay. Everybody knows he's seeking TDIU. And he got TDIU. He got a claim. And what would happen in the normal course, he would say, wait a minute. Thanks for giving me the prospective claim, but I want it retroactive to 2002. And I think the government's position is, he had a claim. He knew he had this claim for TDIU. And it was incumbent upon him to pursue it. And in the absence of pursuing it, we thought he dropped it. But that analysis is flawed. Because when you ask for an earlier effective date, you are capitated by the date of the application. And can only, by statute, go back one year. So he couldn't go all the way back to 2002. Right. So that's why he had to bring it up to the 2008 filing, so that he could get the date. Yes. And what must be understood here is that this is part of an ongoing claim. If there was no ongoing claim here, then Judge Chin's concern is correct. The VA is not on notice. But the VA was on notice. The VA had gotten a 2008 Notice of Disagreement with the initial rating assigned. And under the Veterans Court's analysis in Rice, that required the VA to consider the raised issue of extra scheduler rating as part and parcel of that original 2002 claim. So what rule would you have us construct in this case? Would it be any time that the veteran, in a different proceeding or under a different rubric, raises something, even if he feels to pursue it and feels to request retroactive payment in that case, they should still consider it in any other proceeding he's got? I'm worried about what the rule is coming out of this case, if you prevail. Well, Your Honor, the rule already exists in Comer. This Court said in Comer, when the issue of extra scheduler is raised, then that issue has to be considered with what's going on at the time in which it was raised. If your client had not filed for increased TDIU in December 2009, would you still be here contending that they should have considered it as part of the 2008 case? I would because he filed the same VA form prior to the time that he had been granted service connection, which put them on the same notice that they got in 2009 that he was unable to work. What form are we talking about here? The VA form 89-4. And when was that filed? 2002, I believe. He filed March 2003. March 2003, that's correct, Your Honor. And at that time, he was not service connected. So technically, it was a premature filing, but it was nonetheless notice to the VA of an inability to work due to what will in the future become a service-connected disability. And what if there were no TDIU filings in this particular file, in this particular matter, but nevertheless, here in his appeal to the BVA, he said that he had to retire from his job in 92 due to back problems. That's enough? I believe that reasonably raises the issue, and I believe that that's precisely what this court held in Comer. Why couldn't we just decide the case on this, that this put the BVA on notice that it also had to consider TDIU? Well, you certainly could, Your Honor. But I believe that the way in which the decision was made below, what Judge Hagel did below was to say that a new appeal was required. Well, I think he or the Justice Department are pointing out that when Mr. Palmateer did receive TDIU benefits in April 2011, dating back to December 2009, that would have been the time and place for Mr. Palmateer to say, wait a second, I want my TDIU to go all the way back to 2002 when I made my original filing, and don't cut me off just at December 2009. Well, that might have been the time to alert the VA to that, but technically speaking, the only option that was available under 5110, 38 U.S.C. 5110, was the one-year look-back window from 2009. So you're saying this pursuant, whatever the TDIU claim that filed in December 2009, adjudicated in April 2011, could not have been the vehicle for him to get the relief you're seeking here. That's correct, Your Honor. And if the Court please, I believe we have to try to get away from referring to it as a claim. It is not a claim. It's an issue within the issue of the original claim for service-connected compensation, which has been pending since 2002. Is this all in one place? I mean, you know, we've got a chart here, and it's got so many boxes of the different filings. Are you satisfied that the VA administration of these claims is sufficient so that looking at another separate, I know you don't want to call it a claim, but he's got these TDIU things going on there. Is that part and parcel of what's before any adjudicator of any claim dealing with Mr. Palminteri? Yes, it is, and it is with every other veteran once the issue is raised, once it is put out there that there is an inability to work related to the service-connected disability or disabilities. Why don't we be on your time? We'll restore two minutes of rebuttal, and let's hear from the government. Your Honor, may it please the Court. The Court should dismiss Mr. Palminteri's appeal because the Board's conclusion that his appeal concerned only the effective date for the 40% rating for his back is a finding of fact, and that cannot be adjudicated by this Court. Mr. Palminteri's brief appears to contend that this case turns on a legal standard that lets the Board bifurcate issues. But that's not what happened here. Mr. Palminteri presented the claims separately to the Board. Specifically, he filed the initial back claim in 2002, then he filed a TDIU claim in 2003, then in October of 2008 when he received a 0% rating for his lower back disability, and he subsequently filed a notice of disagreement in December of 2008. Are you saying in his appeal to the Board in 2010, he was essentially barred from being able to raise a TDIU claim? We're not saying he was barred from being able to raise a TDIU claim. We're saying that he took it out of the claim stream by filing a separate claim for TDIU in 2009 and by not raising it. But he could have, theoretically, and that's what the debate is. Did he really do it in the appeal? But theoretically, he could have said, I want to appeal the effective date of my 40% rating, and I also want a TDIU. He could have said both things in his appeal to the Board. Yes, Your Honor. And then the Board would have had to consider it. Yes, Your Honor. And then the next question is, okay, did he actually do that here? No, Your Honor. Instead, he brought this, he brought, this is not a case about what the Board bifurcated. This is the fact that Mr. Palmateer presented a separate, instead of in his 2008 notice of disagreement, he doesn't mention TDIU at all. Yes, but the problem is, I mean, even for sophisticated lawyers, the system is kind of daunting. And here, he brought to the Board's attention, I mean, he filed this 2009 thing, and what if he discovers after the fact, whoops, this isn't going to get me what I need because this only gives me TDIU prospectively, and I want to get it retroactively, and the only way I can do that is have the Board consider it as part of the other claim, right? No, well, Your Honor, we would disagree with that statement. Mr. Palmateer actually had a number of options available to him. At the point of at least 2010, he had an attorney, he had an attorney advising him, and it was the attorney that filled out the substantive appeal from the supplemental statement of the case. At that point, he could have, at any point, asked for the two claims to be joined. He could have appealed the 2009. Could he have just added one sentence and said, I want TDIU too? Yes, Your Honor, but he didn't do that, and here he was not seeking a higher rating. Don't we have cases, Mr. Carpenter mentioned Comer, and I think Robertson is also, the Robertson case is another one that really, I think, states clearly that it's not incumbent on the veteran to use magic words or to make such a claim. If he puts the VA on notice, so tell me if I'm misreading these cases. If the VA is on notice that the service connection thing, which is adjudicating and giving him compensation for, has resulted in his inability to engage in substantially gainful employment, the VA's got to look at that. Even if he doesn't have to use the word TDIU, he doesn't say, I have a TDIU claim. Don't our cases say that? Well, Your Honor, those cases are presented in the context of seeking a higher rating, which at this point in the adjudication of his claim, his attorney specifically stated that he was only seeking the effective date for the 40% rating for his back, and here Mr. Palmateer had, his claim was developed that those cases, Robertson, Comer. Oh, wait, do you disagree with the answer that Mr. Carpenter gave me to my question, that there's no magic number that he could, I mean, the TDIU isn't predicated necessarily on 100% disability rating, and so that 40% lower back, and I don't know if it's in combination with the asthma disability or just separately, could have qualified him for TDIU, right? I believe so. There's no precise formula, as Mr. Palmateer was saying. So he was seeking a higher rating. He got a higher rating. He went from 10% to 40%, and he says in his Form 9, he puts the VA on notice that I haven't been able to work because of my back problems since 1992. What more under our caseload does he have to do in order to tell the board, you should look at this? Well, Your Honor, he had a separate adjudicated claim. He elected, rather than in 2008, to say that he was seeking TDIU, he took it out of the claim stream and filed the 2009 claim. So I don't understand your answer to that question. I'm sorry. Because if your answer is, otherwise they would have considered that enough to bring this to their attention, but because he had a separate claim, it wasn't enough? I mean, that doesn't feel right to me. So the VA goes through the thought process of saying, well, we would have considered this, but obviously he must know what a TDIU means because he's filed this other claim, so we're not going to give him the benefit of the doubt here in this context because he already had the other claim. Is that what's going on here? No, Your Honor. The fact is that under TDIU, the board can actually bifurcate claims. Here, Mr. Palmatier bifurcated his own claim. He filed a separate claim. Instead of keeping them together, he removed it from the claim stream. But the separate claim is, I think, undisputed. The separate claim does not get him what he's seeking. He prevailed on the second claim, but he only got prospective relief. It did not cover the period between 2002 and 2009. That wasn't part and parcel, and it could not have been of the second claim, right? We don't know that, Your Honor. He didn't file an appeal. There are many things Mr. Palmatier simply didn't do. He could have filed an appeal of the 2009 claim and said, I want to stay it pending the resolution of my 2008 back claim. He would be making the same types of arguments had he been basically saying, I've had this informal claim of TDIU since 2002. I can't say with certainty he would have been successful, but I think Tyreuse says that he still needs to do something. Here, there was no error on the board's part by taking Mr. Palmatier took TDIU out of the claim stream when he requested a separate adjudication. He was under counsel of an attorney. He never sought to rejoin them. He never filed an appeal of the 2009 TDIU adjudication, and he didn't explicitly raise it here. Are you saying that under the 2009 case, he could have gotten retrospective relief after 2002? Well, Your Honor, it seems as if I don't know for certain what would have happened, but it seems like the same types of arguments he's raising under Roberson and Comer, he's basically claiming that he had an informal claim. Put differently, if he had in his 2008 notice of disagreement said, I'm entitled to TDIU, the board had ultimately given him TDIU effective 2008. If we were dealing with that kind of appeal, he would still be arguing that I've had an informal claim pending back to 2002. So I think the arguments are exactly the same. The difference is here, he took TDIU out of the claim stream, had an opportunity to have it adjudicated or join it back or do something to preserve these issues, and he didn't. In this court, when people file appeals, and they don't identify, obviously, a different system than the VA system, you are limited to the issues that you request, that you seek appeal on. But don't our cases say that you don't have to explicitly raise a claim for TDIU? But here, Mr. Palmatier affirmatively did that. This isn't a case where we have that he never did that. Here, he sought TDIU, removed it from the claim stream, and never sought appeal. And then under the counsel of the attorney, who filled out his form in 2010, never sought to rejoin these claims or to make it clear. Hypothetically, we look at his board appeal form in 2010, that we see a statement that's equivalent to, I want you, the board, to consider TDIU. In addition to, I want you to consider the effective date of the 40% rating. If we read the appeal form that way, then would you agree that the board was obligated to consider TDIU? I don't think the board was explicit, and I think the board would have to take into account the fact that he submitted the separate claim in December of 2009. So it seems like you're combining the two. I mean, you're saying, you're suggesting, if he had filed a separate claim, he'd be in a better state than he is now. Yes, Your Honor, but he affirmatively filed that claim and affirmatively took it out of, I mean, there's nothing in this file that... Then you're criticizing him. You're saying he took it out of the appeal stream, but then he never pursued it. Well, maybe he didn't pursue it because he wanted to put it back in the other box. But he never put anyone... I mean, one would think, if that was his strategy, that this looks far more like he's trying to bootstrap it to his lower back claim because he failed to appeal the TDIU. Let me make sure I understand your response to my hypothetical. You're saying that Mr. Palmecchiare is in an either-or situation? He either pursues TDIU separate and apart from all his other interests, or they're all bound up... He pursues them all together, but he can't pursue TDIU on both tracks? I think, Your Honor, there has been an explicit statement. He could have pursued it in this case, but we simply, we have an affirmative... Okay, so going back to my hypothetical, if we read something in his appeal form to the board that, in our view, is the equivalent of asking explicitly for TDIU to be considered in his board appeal, then the board was, in fact, obligated to consider TDIU. Is that right? Your Honor, if the court determines that he raised a claim for TDIU, then the board would have had to consider it. But here, we simply submit that the record does not bear that out. Okay. Well, just to be clear, going full circle, if any of the... I think your answer to Judge Chen's question is, in the absence, if he hadn't had these TDIU claims, then perhaps this statement, alerting the board to the fact that he hasn't been able to work since 1992 because of his back pain, would have been sufficient. But what takes it out of the box is because he had this other claim going. Yes, your Honor. It's the fact that he removed it from the claim stream and specifically requested for it to be adjudicated separately. And this wasn't... And again, did that... But are we indeed adjudicating two separate things? What was adjudicated in the TDIU scheme of things filed in 2009 was the prospective relief. And you can tell me why Mr. Carpenter is wrong, but I understood him to say that the only relief available to the claimant in that stream would have been relief going back to 2009, but not going back to 2002. If that is the case, then there's... We're talking about him seeking different things. He's seeking TDIU prospectively in this set of claims,  in the early set of claims. But, your Honor, if they're repeating, why would he have filed these separate claims if he thought it was always a part of it? Again, Mr. Palmateer took an aggressive strategy... Well, I mean, I can't... I mean, I guess the answer to that could be fairly that one is kind of hard-pressed to figure out how the system works and how it's going to be treated. I mean, this whole case... I mean, he had a TDIU claim in 2003. Well, he dropped that because that was before he even got anything more than a zero rating on his back claim. So it's kind of uneasy to understand why he would not have pursued this case. But it's not as quite... I mean, maybe he filed the 2009 thinking, oh, good, I'm going to be able to get TDIU back to 2002. But somewhere along the process, he figured out he's not eligible to get retrospective relief for that claim, so he's got to pursue that retrospective relief in another context. Isn't that kind of reasonable? Well, at that point, he should have done something. At that point, Tyrone says that you need to protect your rights. Here, he was advised by an attorney. TDIU had been identified, and it was up to the veteran to have raised this to the VA. And it was not error for the board to say that it was not raised in the substantive appeal to the board where his attorney checked the box. But if we can prove it, the forum is having sufficiently at least raised it, which I think you conceded it would have raised it if not for these other claims that were pending, which kind of undid what otherwise he would have been entitled to have it heard. I don't think it undid it. I think this is the veteran presenting the claim to the board. I think there were many ways he could have brought it back. Potentially, there are still ways he could still seek to obtain TDIU now through a clear and unmistakable error claim or an equity claim under 5503. But the point is that it's not error for the board to determine that here where the veteran has presented TDIU separately, had it adjudicated, not appeal it, and is under the advice of an attorney to do something, to alert to the board what he wants to do to preserve his rights. I don't think that is not a stretch of veterans' law to require him to do that here, and it was not an error on the part of the board to say that there was no live claim for TDIU as of 2012. Is there some rule of thumb in veterans' law that we're supposed to read the veteran's briefings and arguments generously, sympathetically, something like that? Sympathetically. But the cases that we've talked about here, Your Honor, Roberson and Comer, were cases where you had the veteran proceeding pro se. Here we did have a veteran under the advice of an attorney who was not seeking a higher rating. He merely said, I want to appeal the 40% effective date for my back, and who had separately asked the VA to consider the TDIU claim. So I think that we're in a different context. There is always a duty to construe it sympathetically, but as the Court said in Roberson, that doesn't mean that the veteran is completely relieved of his obligation to do something. The Court has no further questions. I respectfully request to confirm the veteran's report. Unless the panel has some specific questions. Could you just reiterate? Maybe I misunderstood what you said, but what I was asking your friend here about whether or not in the December 2009 filing, I understood you to be saying that he could not have gotten retrospective relief under that filing for 2002. Is that correct? If that were accepted as a claim, then that claim begins on that date, but because it's a claim for increase, there's an exception under 5110B that allows a look back for only one year. So from 2008 to 2009, and that's the entire limitation. And it's clear from this record that Mr. Palmatier has been seeking extra scheduler since 2002. And do you read Comer and Roberson as being limited to cases in which the claimant is proceeding pro se, or are there different rules available? No, and I believe this Court has rejected except in the Q context, that representation by an attorney is not the bar that the VA is urging in this case. That's simply not the law. This is supposed to be a non-adversarial system. This is supposed to be a system in which the VA is the veteran's advocate in the administrative process and is to be looking for these things, to look to see whether or not there is a continuous claim for the initial rating to be assigned. He placed that at issue following the original rating assigned for his back. He disagreed with the initial rating. That issue has never been resolved by the Board. And part and parcel of that is the rating for extra scheduler in the 2002 to 2009 window. Do you know of a case that explicitly says that the VA is supposed to serve as the veteran's advocate? Not in those words, Your Honor, but in the sense of what you had talked about with the government in terms of the Board's obligation and the VA's obligation is to read his pleadings sympathetically, to read them with an eye towards what is he trying to get, as opposed to reading them, as I believe Judge Hagel read it here, with an eye towards what he does not want. Thank you. Thank you very much. Thank you. We thank both counsel and the cases submitted.